## MARIA F. SOLIMENE *vs.* B. GRAUEL & CO., KG, & another.[1]

Middlesex.   January 7, 1987. — May 4, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Negligence,* Manufacturer, Defective product, Design, Proximate cause. *Proximate Cause. Practice, Civil,* Discovery, Verdict, Special questions to jury. *Damages,* Loss of earning capacity, Remittitur, Tort.

At the trial of an action against the manufacturer of an industrial machine, based on claims of negligent design and breach of warranty, the judge, on evidence that left room for a reasonable difference of opinion, correctly left to the jury the question whether the negligence of a third party was a superseding cause of the plaintiff's injuries. [794-796]

At the trial of claims against the manufacturer of an industrial machine, alleging negligent design and breach of warranty, the judge, in denying the defendant's motion for judgment notwithstanding the verdict, properly concluded that the plaintiff had met her burden of proof on each of the two theories of liability advanced by her, and the judge did not, by his remarks, implicitly exclude one of the theories as a basis for liability. [796-798]

At the trial of an action for negligence and breach of warranty, the judge did not abuse his discretion in allowing the plaintiff's medical expert to testify as to a condition diagnosed only ten days before trial, where admission of that testimony was expressly conditioned on reciprocal availability for deposition of both plaintiff's and defendant's experts, and the plaintiff made her expert available. [798-799]

Discussion of procedure under Mass. R. Civ. P. 49(a) where a party at the trial of a civil action claims that the jury's answers to special questions are inconsistent. [800-801]

At the trial of an action based on claims of negligent design and breach of warranty, there was no inconsistency in the jury's answers to special questions holding liable the manufacturer, but not the distributor, of an industrial machine that injured the plaintiff, where the distributor's defense was, in part, that it was not the source of the machine. [801-802]

Special questions propounded pursuant to Mass. R. Civ. P. 49(a) to the jury at the trial of a negligence action were not deficient for failure to refer specifically to proximate cause, where the judge's thorough instructions

[1] Eastern Marking Machine Corporation.

as to the elements, including proximate causation, required for findings of negligence and breach of warranty were sufficient to enable the jury to understand their duty in answering each of the questions. [802]

Nothing in the record of the trial of a civil action supported a contention that the jury's verdict for the plaintiff was the product of bias, misapprehension, or prejudice. [802]

There was no abuse of discretion in a trial judge's declining to order a remittitur or a new trial on a claim that the jury's award of damages was against the weight of the evidence, nor any error in the judge's use of mathematical calculations to analyze a party's claim that the award was excessive, where the judge properly concluded that the jury reached their verdict honestly and fairly on the evidence of the plaintiff's permanent pain and disability and loss of earning capacity. [802-804]

CIVIL ACTION commenced in the Superior Court Department on October 6, 1978.

The case was tried before *Robert J. Hallissey*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Ansel B. Chaplin* for B. Grauel & Co., KG

*Cynthia J. Cohen* (*Leo V. Boyle & Michael B. Bogdanow* with her) for the plaintiff.

ABRAMS, J. On October 8, 1975, the plaintiff, Maria F. Solimene, was injured while working with an industrial machine manufactured by the defendant, B. Grauel & Co., KG (Grauel). The plaintiff sought damages from Eastern Marking Machine Corporation (Eastern), which, she alleged, distributed the machine to her employer, and from the machine's manufacturer, Grauel, on the theories of negligent design and breach of warranty. After trial, the jury found that Grauel was negligent and had violated its warranty of merchantability.[2] We granted the defendant's petition for direct appellate review.

Grauel raises several issues on appeal. First, Grauel argues that its motion for directed verdict or for judgment notwith-

---

[2] The jury also found that Eastern was not negligent and did not violate its warranty of merchantability. The plaintiff did not appeal from the entry of judgment for Eastern.

standing the verdict should have been allowed and judgment entered in its favor on both the negligence and warranty counts because the conduct of the plaintiff's employer constituted a superseding cause of the plaintiff's injuries as a matter of law.[3] Grauel further argues that the trial judge abused his discretion by permitting the plaintiff's expert to testify as to a condition diagnosed only ten days before trial, in violation of a pretrial discovery order. As to the jury instructions and special questions, Grauel contends that the verdicts entered against it, but in favor of Eastern, are inconsistent and must be set aside. In addition, Grauel argues that the special questions were insufficient because they did not specifically refer to the issue of proximate cause. Grauel also argues that the verdicts must be set aside as against the weight of the evidence. Grauel also challenges the amount of damages awarded by the jury. Grauel contends that the trial court erred in declining to order a remittitur because the amount awarded was against the weight of the evidence. Grauel also challenges the judge's use of a table depicting various interest and inflation rates to support the conclusion that the jury's award was not so excessive as to require remittitur. Last, Grauel argues that there was insufficient evidence to support recovery for impairment of future earning capacity. We affirm the judgment for the plaintiff.

We summarize the facts. In reviewing the judge's refusal to direct verdicts for Grauel, we view the evidence in the light most favorable to the plaintiff. *Everett* v. *Bucky Warren, Inc.,* 376 Mass. 280, 282 (1978). On the day of the accident, the plaintiff was working for the Crystalonics Division of Teledyne, Inc. (Teledyne). The plaintiff's job was to operate a machine, designated a "B3/FR" by the manufacturer. The machine consisted of two parts, an imprinting unit and a motorized unit.[4] With this machine, the plaintiff imprinted information on small electronic parts. While she was operating

---

[3] Grauel also contends that the trial judge based his denial of the motion for judgment n.o.v. on purely speculative grounds.

[4] Further evidence of the operation of the machine will be presented as it becomes relevant to the specific claims of error. See *infra* at 797-798.

the B3/FR on the day of the accident, one of the objects that the plaintiff was imprinting fell off the base of the machine. The plaintiff turned off the machine so that she could retrieve the object. While the plaintiff was in the process of retrieving the object, the plaintiff inadvertently reactivated the machine. An oscillating arm descended and pinned the plaintiff's wrist to the base of the machine.

The plaintiff was trapped in the machine for twenty to forty minutes. Several coworkers struggled to move the oscillating arm but were unsuccessful. When the plaintiff's wrist finally was freed from the machine, her hand immediately became swollen and she was taken to a hospital.

Although the plaintiff was treated and released on the same day, five weeks later, on November 14, 1975, surgery was performed on the plaintiff's right wrist to relieve symptoms of carpal tunnel syndrome, a condition caused by pressure on a nerve in the hand. The evidence indicated that the plaintiff's right hand continues to be severely impaired. She has impaired grip strength and continues to suffer from traumatic sympathetic reflex dystrophy, which is characterized by throbbing pain, burning sensation, intermittent swelling, and a feeling of vise-like compression at the wrist.

Nine months after the accident, on July 6, 1976, the plaintiff returned to her position at Teledyne. From July, 1976, until January, 1977, the plaintiff operated the same B3/FR that she had operated prior to the accident. In May, 1977, Teledyne transferred her to another job within the company. She has been steadily employed at an increasing salary since her return to work.

The trial began on January 7, 1985, in the Superior Court. At the conclusion of the evidence, the judge submitted the matter to the jury on special questions. See Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974). In their answers to the special questions, the jury found that Eastern was not negligent. Grauel's negligence was assessed at ninety-five per cent and the plaintiff's negligence was assessed at five per cent. See

G. L. c. 231, § 85 (1984 ed.).[5] On the breach of warranty
claim, the jury found that Eastern did not violate its warranty
but that Grauel did violate its warranty of merchantability. On
this claim, the jury awarded the plaintiff $275,000, plus in-
terest.[6] Judgment entered for the plaintiff. On January 28,
1985,[7] Grauel filed posttrial motions for judgment not-
withstanding the verdict and for a new trial. See Mass. R.
Civ. P. 50 (b), 365 Mass. 814 (1974). The judge denied the
motions. Grauel appeals.

1. *The motions for directed verdict and judgment not-
withstanding the verdict.* At the close of the plaintiff's case
and at the close of all the evidence, Grauel moved for a directed
verdict. See Mass. R. Civ. P. 50 (a), 365 Mass. 814 (1974).
The judge denied these motions. Grauel thereafter moved for
judgment notwithstanding the verdict and, in the alternative,
for a new trial, arguing that the duty to prevent harm to the
plaintiff had shifted from it to the plaintiff's employer as a
matter of law. Grauel also argues that the judge denied the
posttrial motions on purely speculative grounds. We do not
agree with these contentions.

Generally, questions of causation, proximate and interven-
ing, present issues for the jury to decide. See, e.g., *Michnik-Zil-
berman* v. *Gordon's Liquor, Inc.,* 390 Mass. 6, 12 (1983);
*Mullins* v. *Pine Manor College,* 389 Mass. 47, 58 (1983);
*Jesionek* v. *Massachusetts Port Auth.,* 376 Mass. 101, 106
(1978); *Lane* v. *Atlantic Works,* 111 Mass. 136, 140 (1872).
Relying on § 452 of the Restatement (Second) of Torts (1965),
Grauel asserts that the question of superseding cause should

---

[5] The jury determined the plaintiff's damages on the negligence claim to
be $275,000, plus interest. After reduction of that amount by the percentage
of the plaintiff's negligence, judgment entered for the plaintiff on this claim
in the amount of $261,250, plus interest.

[6] After entry of judgment, the judge ordered that the plaintiff may enforce
judgment on either the warranty or the negligence claim, but not on both
claims.

[7] Although the plaintiff's husband brought a loss of consortium claim, he
consented to its dismissal on January 16, 1985.

be decided by the judge as a matter of law.[8] Grauel neglects to consider other sections of the Restatement which bear on this claim. Restatement (Second) of Torts, *supra* at § 453 comment b, which discusses the function of the court on questions of superseding cause, states that "[i]f . . . the negligent character of the third person's intervening act . . . is a factor in determining whether the intervening act relieves the actor from liability for his antecedent negligence, and under the undisputed facts there is room for reasonable difference of opinion as to whether such act was negligent or foreseeable, the question should be left to the jury." The judge left this issue to the jury. The jurors determined that any negligence of the employer was not a superseding cause of the plaintiff's injuries.

Because the employer had owned the B3/FR for nine years and was aware of the particular risks associated with use of the product, Grauel argues that the employer was in a better position than the manufacturer to make the machine safe for its intended use. Whether a third party is in a better position to prevent harm to another is not determinative of the issue of superseding cause.[9] In *McDonald v. Snelling,* 14 Allen 290, 296 (1867), we stated that "[t]he test is to be found, not in the

---

[8] Restatement (Second) of Torts § 452 (1965) provides: "(1) Except as stated in Subsection (2), the failure of a third person to act to prevent harm to another threatened by the actor's negligent conduct is not a superseding cause of such harm. (2) Where, because of lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause."

We note that the judge quoted § 452(2) directly in his charge to the jury. Grauel argues that comment f to § 452 requires the issue of superseding cause to be decided by the judge. In relevant part, this comment states that "the circumstances may be such that the court will find that all duty and responsibility for the prevention of the harm has passed to the third person." *Id.* at § 452 comment f. In this case, the judge did not so find and therefore he correctly left the issue to the jury to decide.

[9] Restatement (Second) of Torts, *supra* at § 440, defines superseding cause as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."

number of intervening events or agents, but in their character, and in the natural and probable connection between the wrong done and the injurious consequence." See *Jesionek, supra* at 105; *Lane, supra* at 140.

In this case, Grauel designed the product to operate as the plaintiff was using it. There was no evidence that Teledyne modified or altered the machine in any way. Although the employer gave the plaintiff few instructions as to proper use of the B3/FR, the evidence indicates that Grauel did not give Teledyne any warnings or instructions as to proper use of the machine. Thus, Teledyne's use of this product, as it was intended and without any alterations to the product, is a foreseeable use.

As a general rule, a tortfeasor is liable "for the foreseeable intervening conduct of a third party whether that conduct is negligent or not." *Correia* v. *Firestone Tire & Rubber Co.,* 388 Mass. 342, 352 n.10 (1983), quoting *Wilborg* v. *Denzell,* 359 Mass. 279, 285 (1971). Grauel, as the designer of the product, was in the best position to recognize and eliminate design defects. See *Uloth* v. *City Tank Corp.,* 376 Mass. 874, 881 (1978). The judge correctly left this issue to the jury through appropriate jury instructions.[10] See *Sweenor* v. *162 State St., Inc.,* 361 Mass. 524, 527 (1972) (rare case that it can be ruled as a matter of law that defendant's burden of proof has been satisfied).

Grauel also contends that its motion for judgment notwithstanding the verdict should have been granted because the judge improperly speculated that the jury relied on one of the two theories of defect advanced by the plaintiff. Grauel concludes that, because the judge suggested that the jury relied on one of the theories, the judge "implicitly acknowledge[d]"

---

[10] Grauel argues that the failure of the judge to mention the plaintiff's employer by name in the superseding cause charge constituted prejudicial error. A judge is not required to instruct the jury in the precise form requested by counsel so long as the charge is accurate and complete. Our examination of the whole charge reveals that the judge provided thorough instructions on all the necessary issues. *Leech* v. *Ebers,* 12 Mass. App. Ct. 1004, 1005 (1981). See *Commonwealth* v. *Wills,* 398 Mass. 768, 780 (1986).

that the jury could not properly have found liability based on
the other theory of defect. We do not agree with the defendant's
reading of the judge's findings.

The plaintiff advanced two theories of design defect. The
first theory involved the placement of the on/off toggle switch.
The plaintiff stated that, just prior to the accident, she had
turned the machine off by moving the on/off switch away from
her. The plaintiff then "went with [her] arm in back of the
base to retrieve" the object that had fallen. After retrieving the
object, the plaintiff stated that she brought her arm back and,
as she was doing so, her elbow hit the on/off switch, reactivat-
ing the machine and trapping her wrist under the oscillating
arm.[11] The plaintiff presented expert testimony that there were
several alternative designs for the switch, including guards
which extend above the level of the toggle switch, recessed
switches or push-button switches, which were feasible design
alternatives that could have prevented this accident.

The plaintiff's second theory of defect involved the lack of
a guard over the oscillating arm. The plaintiff presented expert
testimony that a guard was both possible and feasible at the
time this machine was designed. A guard would have prevented
the plaintiff's arm from being trapped by the machine's oscil-
lating arm.

In ruling on Grauel's posttrial motions, the judge noted that
it was his belief that the verdict was based on the guard theory
of defect. The judge further stated that, even if the verdict
were based on the switch theory of defect, the evidence showed
that if the switch were "recessed, with shoulders," it could not
have been unintentionally activated. Based on these statements,
we do not believe, as Grauel contends, that the judge implicitly

---

[11] The evidence was conflicting as to whether the switch operated as the
plaintiff testified. In Grauel's original answers to interrogatories, Grauel
stated that the toggle switch operated as the plaintiff had stated, with the
switch pointed away from the operator in the "off" position. Grauel filed
an amended answer to this interrogatory stating that the switch was mounted
so that, in the "on" position, the switch was away from the operator and
in the "off" position, the toggle switch was toward the operator. At trial,
both answers were read to the jury.

acknowledged that the jury could not properly impose liability solely on the basis of a switch theory.

The plaintiff has the burden to show that Grauel's negligence caused her injury. The plaintiff may meet that burden by presenting two possible theories of defect to the jury. "There is no requirement of law that the plaintiff point out the exact way an accident happens." *McLaughlin* v. *Bernstein,* 356 Mass. 219, 226 (1969). See *Carey* v. *General Motors Corp.,* 377 Mass. 736, 740 (1979). Moreover, the precise manner in which the harm occurs does not have to be foreseen. *Michnick-Zilberman* v. *Gordon's Liquor, Inc.,* 390 Mass. 6, 12 (1983). The plaintiff sustained her burden by proving that there was a greater probability that the harm which occurred was due to causes for which Grauel was responsible.[12]

2. *Admission of testimony of new diagnosis.* On January 3, 1985, the plaintiff's medical expert furnished Grauel with a copy of a report of a physical examination of the plaintiff that he had performed during the previous week. The trial commenced on January 7, 1985, only four days after Grauel received a copy of this report. The expert indicated in his report that the plaintiff was suffering from "symptoms and signs of a traumatic sympathetic reflex dystrophy, . . . [which is] a relatively frequent complication of a carpal tunnel syndrome." Traumatic sympathetic reflex dystrophy was not mentioned in any prior reports.

Grauel moved to limit the testimony of this expert by excluding any evidence of this diagnosis. The judge indicated that he would allow Grauel's motion unless the plaintiff's expert were made available for deposition by Grauel. The judge also ruled that, if the plaintiff made her expert available for deposition and Grauel deposed that expert, then Grauel must make its expert available for deposition by the plaintiff. Although the plaintiff made her expert available for deposition, Grauel

---

[12] The only other possible explanation for this accident was that the plaintiff did not shut off the machine and reached into the operating machine to retrieve the dropped object. It was the jury's finding that the plaintiff was only five per cent negligent, while Grauel was ninety-five per cent negligent. Thus, the jury appear to have rejected that defense.

chose not to take advantage of this opportunity.[13] Therefore, the plaintiff's expert was permitted to testify as to this new diagnosis at trial.

The conduct and scope of discovery is within the sound discretion of the judge. See, e.g., *Bishop* v. *Klein,* 380 Mass. 285, 288 (1980); *Eagan* v. *Marr Scaffolding Co.,* 14 Mass. App. Ct. 1036 (1982); *Schneider* v. *Lockheed Aircraft Corp.,* 658 F.2d 835, 848 n.8 (D.C. Cir. 1981); 8 C.A. Wright & A.R. Miller, Federal Practice and Procedure §§ 2006, 2215, 2234 (1970 and Supp. 1986). While discovery orders are reviewable on appeal from entry of a final judgment, we do not interfere with the judge's exercise of discretion in the absence of a showing of prejudicial error resulting from an abuse of discretion. See *Washington Hosp. Center* v. *Cheeks,* 394 F.2d 964, 965-966 (D.C. Cir. 1968).

The judge conditioned the admissibility of the testimony of the plaintiff's expert as to the new diagnosis on the opportunity of the defendant to depose the expert. Grauel's choice not to pursue this alternative does not require a conclusion that the testimony as to the diagnosis resulted in unfair surprise. "We must assume [Grauel's] counsel was prepared to cross-examine all opposing expert medical witnesses on the expectation that they would testify consistent with the theory of [plaintiff's] case." *Schneider* v. *Lockheed Aircraft Corp., supra.*

3. *Special verdict.* Grauel challenges the jury's responses to special questions in two respects. First, Grauel argues that the responses were "hopelessly inconsistent." Grauel concludes that the proper remedy is a new trial. Second, Grauel asserts that the questions were insufficient because they failed to mention the element of proximate cause. According to Grauel, this omission constitutes prejudicial error. These contentions are without merit.

The judge submitted seven questions to the jury. The first three questions concerned the negligence of Grauel, Eastern, and the plaintiff. The fourth question asked the jury to deter-

---

[13] Grauel did not depose the plaintiff's expert because it did not want the plaintiff to obtain "belated discovery of Grauel's medical expert."

mine the percentage of negligence attributable to each party. The next two questions addressed whether Grauel or Eastern, or both, violated their warranties of merchantability. The final question asked the jury to assess damages.

Because we have explicitly left open the appropriate procedure to be followed under rule 49 (a), we comment briefly on the procedure to be followed. See *International Fidelity Ins. Co.* v. *Wilson,* 387 Mass. 841, 849 n.11 (1983). We are guided in the resolution of this procedural issue by Federal courts' interpretation of the Federal Rules of Civil Procedure. Because the Massachusetts Rules of Civil Procedure are patterned after the Federal rules, we interpret our rules consistently with the construction given their Federal counterparts. *Rollins Envtl. Servs., Inc.* v. *Superior Court,* 368 Mass. 174, 179-180 (1975).

Under rule 49 (a), the jurors return answers to each question or each issue submitted to them. The jurors do not return a general verdict. The answers to the questions or issues submitted are considered a special verdict consisting of "a statement of facts the jury have found from which the judge determines the appropriate judgment." *Commonwealth* v. *Licciardi,* 387 Mass. 670, 675 (1982). In determining whether there is an inconsistency in the jury's answers, the answers are to be viewed in the light of the attendant circumstances, including the pleadings, issues submitted, and the judge's instructions. See *Bates* v. *Jean,* 745 F.2d 1146, 1151 (7th Cir. 1984), citing *Gallick* v. *Baltimore & O. R.R.,* 372 U.S. 108, 118-122 (1963). See also 9 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2510, at 516 (1971 & Supp. 1986). If the jury's answers can be harmonized, they must be resolved so as to harmonize them. Cf. *McCue* v. *Prudential Ins. Co.,* 371 Mass. 659, 664 (1976), citing *Atlantic & Gulf Stevedores, Inc.* v. *Ellerman Lines, Ltd.,* 369 U.S. 355, 364 (1962); *Holder* v. *Gilbane Bldg. Co.,* 19 Mass. App. Ct. 214, 218 (1985). Accord *Alverez* v. *J. Ray McDermott & Co.,* 674 F.2d 1037, 1040 (5th Cir. 1982). See generally 9 C.A. Wright & A.R. Miller, Federal Practice and Procedure, *supra* at 515-516. If the answers cannot be harmonized with the evidence and the instruc-

tions, and the jurors have not been discharged, then the jurors must be instructed to reconsider their answers to the special questions. If the jurors have been discharged and cannot be reinstructed, a new trial is required because it is the jurors' constitutional responsibility to resolve the facts. See *Hayes* v. *Ariens Co.*, 391 Mass. 407, 414 (1984). See also *Bates* v. *Jean, supra* at 1151-1152; *Andrasko* v. *Chamberlain Mfg. Corp.*, 608 F.2d 944, 947 (3d Cir. 1979); *Guidry* v. *Kem Mfg. Co.*, 598 F.2d 402, 406 (5th Cir. 1979), cert. denied sub nom. *Kem Mfg. Co.* v. *Drackett Prods. Co.*, 445 U.S. 929 (1980). Cf. *Atlantic Tubing & Rubber Co.* v. *International Engraving Co.*, 528 F.2d 1272, 1276 (1st Cir.), cert. denied, 429 U.S. 817 (1976). See 9 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2510, *supra* at 517.[14]

Pursuant to his duty to harmonize the jury's answers, the judge noted in his memorandum and order in response to the posttrial motions that Eastern's defense in part was that it was not the source of the machine purchased by Teledyne. If Eastern

---

[14] When a case is submitted to the jury under rule 49 (b) of the Massachusetts Rules of Civil Procedure, 365 Mass. 812 (1974), the jury are required to render a general verdict and to make answers to interrogatories. Rule 49 (b) sets forth several alternatives for evaluating the jury responses. If the general verdict and the answers are consistent, judgment shall be entered in accord with them. If the jury's answers to interrogatories are consistent with each other but not with the general verdict, judgment may be entered on the answers. This power to enter judgment despite the difference between the answers and the general verdict does not violate the Seventh Amendment right to jury trial because the court does not reevaluate the jury's findings of fact. Instead, the more specific answers are allowed to control the general verdict. 5A Moore's Federal Practice par. 49.04 (2d ed. 1986). These alternatives set forth in the rule indicate that objection prior to discharge of the jury is necessary, and courts have applied a waiver rule if counsel fails to object to the inconsistencies. See, e.g., *McCue* v. *Prudential Ins. Co., supra* at 663; *Fernandez* v. *Chardon*, 681 F.2d 42, 58 (1st Cir. 1982), aff'd sub nom. *Chardon* v. *Fumero Soto*, 462 U.S. 650 (1983); *Service Publications, Inc.* v. *Goverman*, 396 Mass. 567, 573 (1986). There is no constitutional infirmity because, despite the inconsistencies, there is enough evidence of the jury's resolution of the dispute for a valid judgment to be entered. Thus, the procedure under rule 49 (b) differs from that under rule 49 (a).

If there is total inconsistency, meaning that the answers are inconsistent with each other and inconsistent with the general verdict, "judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial." Mass. R. Civ. P. 49 (b).

were not the source of the machine, Eastern would not be liable to the plaintiff. Thus harmonized, the verdicts are not inconsistent.

As to Grauel's contention that the questions were deficient without reference to proximate cause, "[t]he nature, scope, and form of special questions submitted to a jury pursuant to Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974), are matters within the discretion of the trial judge" (citations omitted). *Everett* v. *Bucky Warren, Inc.,* 376 Mass. 280, 291 (1978). While none of the judge's questions specifically focused the jury's attention on the causation issue, the judge thoroughly instructed the jury on the elements necessary for a finding of negligence and breach of warranty, including the element of proximate causation. The questions submitted to the jury are viewed in light of the instructions given by the judge. *McCormick* v. *B.F. Goodrich Co.,* 8 Mass. App. Ct. 885, 887 (1979). The instructions given by the judge were sufficient to enable the jury to understand their duty in answering each of the questions. See *Charles L. Hazelton & Son* v. *Teel,* 349 Mass. 617, 620 (1965).

4. *Verdicts against the evidence and the weight of the evidence.* Grauel asked the judge to set aside the verdict for the plaintiff as against the evidence and the weight of the evidence. A motion to set aside a verdict as against the evidence is addressed to the sound discretion of the judge. "It is the right and duty of a judge presiding at the trial of a civil case to set aside the verdict of the jury when in his judgment it is so greatly against the weight of the evidence as to induce in his mind the strong belief that it was not due to a careful consideration of the evidence, but that it was the product of bias, misapprehension or prejudice." *Scannell* v. *Boston Elevated Ry.,* 208 Mass. 513, 514 (1911). The judge's memorandum and order indicate a careful consideration of Grauel's claims. There is nothing in the record which would support Grauel's conclusion that the judge erred in his assessment that the verdict was not the product of bias, misapprehension or prejudice.

5. *Damages.* Grauel challenges the damage award on several bases. Grauel asserts that the damages awarded were against

the weight of the evidence. Thus, Grauel argues that the judge erred in declining to order a remittitur. Grauel also challenges the judge's use of a table showing a range of inflation and interest rates to support the conclusion that the jury's award was not excessive. Finally, Grauel contends that there was insufficient evidence to support recovery for impairment of future earning capacity.

A challenge to the damages awarded as against the weight of the evidence generally is a matter within the judge's discretion. As the judge here recognized, "a judge has no right to set aside a verdict merely because he himself would have assessed the damages in a different amount." *Bartley* v. *Phillips,* 317 Mass. 35, 40 (1944). The judge concluded that the jury could have reached, honestly and fairly, the award that they did based on the plaintiff's continuing permanent pain and disability, and the impairment of her earning capacity. For this reason, the judge declined to exercise his discretion and to order a remittitur or a new trial because the award was against the weight of the evidence. We find no abuse of discretion in this ruling.

Grauel argued that the award was excessive if analyzed as to the amount the plaintiff could receive on a weekly basis. The judge appears to have used a computer to analyze Grauel's claim. He constructed a table to show the range of weekly and yearly amounts that the plaintiff could receive from her award, given various combinations of interest and inflation rates. Grauel argues that it has not had an opportunity to explore the basis of the document and that the court's construction and use of this table represents an effort to take judicial notice of the information contained in it. We do not agree. The judge simply analyzed the claim of excessive damages by using mathematical calculations to determine if the award were excessive. The judge obviously gave Grauel's claim serious consideration and the table illustrates the care with which the judge analyzed Grauel's assertion concerning the award.[15] The judge

---

[15] In deciding whether the damages were excessive, the judge was not limited to Grauel's analysis.

denied Grauel's motion for new trial because he concluded that the jury reached the verdict "honestly and fairly" considering, among other things, the evidence of permanent pain and disability.

As to Grauel's last claim of error, the judge instructed the jury that the plaintiff was entitled to an award which should include, among other things, the extent by which her ability to earn has been reduced. Grauel objected during the plaintiff's closing statement to the argument concerning loss of earning capacity on the ground that there was no evidence of lost earning capacity. The judge stated that he intended to permit the jury to consider the subject of lost earning capacity[16] on the basis of their common knowledge. The judge instructed the jury on loss of earning capacity. Grauel did not object to that instruction, thus this claim is not before us. See Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974).

*Judgment affirmed.*

---

[16] The plaintiff in a personal injury action is entitled to recover damages for impairment of earning capacity. *Nisbet* v. *Medaglia,* 356 Mass. 580, 583 (1970). "The assessment of damages for impairment of earning capacity rests largely on the common knowledge of the jury, sometimes with little aid from evidence." *Griffin* v. *General Motors Corp.,* 380 Mass. 362, 366 (1980), citing *Doherty* v. *Ruiz,* 302 Mass. 145, 147 (1939). The constant or increasing total earnings of a plaintiff since the accident is of some relevance in the determination of loss of earning capacity. *Roddy* v. *Fleischman Distilling Sales Corp.,* 360 Mass. 623, 629 (1971). But, that fact alone is not dispositive of the issue. Although the plaintiff "has not yet suffered economic loss . . . [,] if [s]he cannot obtain gainful employment elsewhere [s]he is chained to [her] present job in a kind of economic servitude." *Id.,* quoting *Wiles* v. *New York, C. & St. L. R.R.,* 283 F.2d 328, 332 (3d Cir. 1960). See *Doherty* v. *Ruiz, supra* at 146 (one who would not have been employed, regardless of his or her injury, may still recover for impaired earning capacity).