USCA1 Opinion

 

 United States Court of Appeals For the First CircuitNo. 98-2126 SAMOS IMEX CORPORATION, Plaintiff, Appellant, v. NEXTEL COMMUNICATIONS, INC., Defendant, Appellee, v. BROOK HILL ENTERPRISES, INC., ET AL., Third-Party Defendants. APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] Before Boudin, Circuit Judge, Cyr, Senior Circuit Judge, and Lynch, Circuit Judge.     Herbert Abrams with whom Barry C. Klickstein and Abrams,Roberts, Klickstein & Levy were on brief for appellant. Maia Aparo Moran with whom F.J. McDonald and Law Offices ofF.J. McDonald were on brief for appellee.October 26, 1999   BOUDIN, Circuit Judge. In June 1997, plaintiff-appellantSamos Imex Corporation sued Nextel Communications, Inc. in thefederal district court in Massachusetts. The gist of the complaintwas that in 1995, Nextel had constructed an antenna or "monopole,"over 100 feet high, within several feet of a building leased andoccupied by Samos Imex under a lease that required Samos Imex tomake repairs to the building. Samos Imex claimed that the antenna,which itself involved subsurface construction, had caused SamosImex's building to shift, resulting in structural damage andrendering its freight elevator inoperative. Prior to the suit being filed, John Carota, a structuralengineering expert, gave Samos Imex a report evaluating thecondition of the building, recommending repairs, and identifying"the probable cause" of the damage to the building and the freightelevator. The probable cause section of the report began byconcluding that "[t]he probable cause of the recent movement andracking [i.e., shifting] [of] this three story brick building . .. can be directly attributed to the building responding to theeffects of constructing the monopole project." The report thenidentified various "aspects" of the antenna project that "eithersingularly or in combination could have caused the failed elevatorand cracked building support columns and walls." This document, which was prepared in advance of thelitigation, was the only disclosure of anticipated expert testimonymade by Samos Imex by the time of the discovery deadline forplaintiff's expert testimony. Thereafter, Nextel moved to excludeCarota's testimony and for summary judgment. It argued that theCarota report was not accompanied by other information required byFed. R. Civ. P. 26(a)(2)(B), such as exhibits to be used at trialby the expert, a list of his publications, disclosure ofcompensation, and a list of other cases in which the expert hastestified within the preceding four years. In the same motion,Nextel sought summary judgment on the separate ground that thereport, even if believed, did not establish that the antenna hadmore likely than not caused the harm complained of; rather,according to Nextel, the report dwelt solely in "could haves" and"possibilities."  In August 1998, the district court heard oral argumentand decided the matter from the bench. It rejected the request toexclude the engineering report as a sanction for violation ofdiscovery rules, but it entered summary judgment on the ground thatthe report did not purport to establish that "more probably thannot" the antenna construction was the cause of the damage--thethreshold of proof that the court said was inherent in thepreponderance of the evidence standard that generally applies incivil cases. In the hearing, counsel for Samos Imex responded to thecourt that Carota would testify that when he used the phrase "theprobable cause" in his report, he meant "more likely than not." The court said that it understood the proffer to mean that ifCarota was called to the stand "he would answer that more likelythan not the shifting of the building which caused the elevator tobind was [caused by] the Nextel pole." However, the court saidthat to accept this proffer as modifying the report would undermineproper case management and discovery rules and that the reportitself remained "inadequate given the required standard." Samos Imex now appeals and, reviewing the grant ofsummary judgment de novo, see Cadle Co. v. Hayes, 116 F.3d 957, 960(1st Cir. 1997), we reverse. The phrase "probable cause" is used,in the narrow confines of Fourth Amendment precedent, to establisha standard less demanding than "more probable than not." Forexample, arrests--made long before all proof is assembled for atrial--can be justified as based on probable cause by showing areasonable basis for belief that a suspect committed a crime; inmany cases such a basis exists without a 50 percent-plus likelihoodthat the suspect is guilty. See, e.g., United States v. Garcia,179 F.3d 265, 269 (5th Cir. 1999); cf. United States v. Sokolow,490 U.S. 1, 7 (1989). The standard is obviously higher at trial where, in acivil suit for negligence, the plaintiff must normally show bothfault and causation. To establish the latter, plaintiff must showthat it is more probable than not that the injury was caused by theaction or event (or a combination of them) for which the defendantwas responsible. See, e.g., Forlano v. Hughes, 471 N.E.2d 1315,1319-20 (Mass. 1984); Bigwood v. Boston & N. St. Ry. Co., 95 N.E.2d751, 752 (Mass. 1911). And laymen and many judges might easilyrefer to such a cause as "the probable cause" of an accident,meaning that it was the more likely than not cause. Words like "probable" and "likely" are highly elastic incommon use, which is why they are often surrounded by other phrases("more probable than not", "a reasonable likelihood"), thatsometimes lend greater precision and sometimes do not. When amagistrate judge speaks of "probable cause" in a suppressionhearing, we assume that he means a reasonable basis sufficient tosatisfy the Fourth Amendment; but if a doctor testified on thestand that the probable cause of death was a heart attack, he mightbe expected to mean that the heart attack was more likely than notthe cause of death. If the doctor meant only that a heart attackwas merely one possible cause among others, it would be up to theopposing counsel to draw this out on cross-examination. In all events, counsel for the plaintiff made animmediate proffer that the expert would testify that the monopolewas more likely than not the cause of the injury and that that waswhat he had intended by use of the phrase "probable cause" in thereport. If there were any doubt, it would be easy enough toconduct a brief deposition of the witness. It is one thing toallow counsel to contradict by proffer something the expert said inthe report or to supply a manifest omission; in that event, casemanagement and discovery concerns would be legitimate objections. But it is hard to justify dismissal of a case on summary judgment,based on what is at worst ambiguous language, in the face of anexplicit proffer by counsel that the witness meant just what manyreaders would expect the witness to have intended. Admittedly, further in the Carota report he used phraseslike "could have caused" and the like, and Nextel presses thispoint on appeal. But the main use of these phrases, which occur inthe same paragraph as the "probable cause" statement, are actuallyreferences to multiple causes all of which related to theconstruction or operation of the antenna and for all of whichNextel would likely be responsible (absent some furtherexplanation). So long as Nextel was responsible for all of thepossible causes, it would not matter whether the precise causalpath could be identified. See, e.g., Solimene v. B. Grauel & Co.,507 N.E.2d 662, 667 & n.12 (Mass. 1987); Carey v. General MotorsCorp., 387 Mass. N.E.2d 583, 585-86 (Mass. 1979). This is not a case in which the witness mouths the properconclusion but the detailed explanation in his report or profferedtestimony clearly contradicts or provides no arguable foundationfor the conclusion. See, e.g., Colantuonis v. Alfred Calcagni &Sons, Inc., 44 F.3d 1, 5 (1st Cir. 1994). Nor does this appear tobe a case in which the expert was talking generally about whybuildings collapse without reaching a conclusion as to why thisspecific building had shifted; on the contrary, the pivotalsentence in the probable cause section of the report (quoted above)spoke of "the probable cause" of the shifting of "this three-storybrick building." Nextel was free to depose Carota to clarify his"could have" references, but it was not entitled to summaryjudgment on the present state of the record.  Nextel asks us to affirm the district court's decision ona distinct "alternative" ground, namely, the alleged failure ofNextel to comply with discovery rules by furnishing requiredinformation about the expert. At one point in the transcript thedistrict court appears squarely to have rejected such a claim ofviolation as the basis for excluding Carota's testimony, hardly achoice comprising a patent abuse of discretion. In effect, Nextelis asking us to conclude that there was a violation of thediscovery rules and that it was of such a character as to compelthe district court to exclude the report as a sanction for thisviolation. It is quite true that as amended, the civil procedurerules make clear that exclusion of evidence is a standard sanctionfor a violation of duty of disclosure under Rule 26(a). See Fed.R. Civ. P. 37(c); Klonoski v. Mahlab, 156 F.3d 255 (1st Cir. 1998). But this is far from saying that the district court is obligated toexclude evidence based on a failure, long before trial and likelysubject to correction without much harm to the opposing party; nordo we know whether there may be some "justification" for anyfailure to disclose. See Fed. R. Civ. P. 37(c). In all events, onremand the district court is free to enforce its discovery rules byordering compliance, sanctions, or any other appropriate remedy. We have no bias whatever against summary judgment oragainst opinions from the bench, both of which are often marks ofefficient management. But where a building incurs harm aftersignificant nearby construction and an expert calls theconstruction "the probable cause," we think that more is needed tosupport summary judgment than an easily resolved doubt as towhether the expert meant "more probable than not." There may wellbe more to the story, but we can only act on what the recorddiscloses. Nothing precludes a renewed motion for summary judgmentif and when Carota is deposed. The judgment of the district court is reversed and thematter remanded for further proceedings consistent with thisopinion. It is so ordered.