The PEOPLE of the State of
Colorado, Complainant,

v.

John A. McNAMARA III, Respondent.

Nos. 12PDJ022, 12PDJ072, 12PDJ080.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Sept. 10, 2013.

Following a sanctions hearing, a hearing board disbarred John A. McNamara III (Attorney Registration Number 19382), effective October 15, 2013. Despite being prohibited from practicing law by two orders of suspension, McNamara failed to promptly notify clients that he could no longer represent them. Rather, he knowingly continued to practice law in violation of his suspension orders, solicited new clients, and accepted fees from them. By doing so, he violated Colo. RPC 3.4(c), which provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." He also flouted Colo. RPC 5.5(a)(1), which bars lawyers from practicing in the State of Colorado without a law license or specific authorization. In addition, McNamara made misrepresentations by omission to his clients, falsely leading them to believe he was a validly licensed attorney. These misrepresentations violated Colo. RPC 8.4(c), which proscribes conduct involving dishonesty, fraud, deceit, or misrepresentation. Finally, to conceal his unauthorized practice of law, McNamara assumed the identity of a retired lawyer, impersonating that lawyer in pleadings and in a telephone court conference. These affirmative misrepresentations likewise violated Colo. RPC 8.4(c).

## OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(b)

On July 15, 2013, a Hearing Board comprised of James D. Brown and Richard P. Holme, members of the bar, and William R. Lucero, the Presiding Disciplinary Judge ("the PDJ"), held a hearing pursuant to C.R.C.P. 251.18. Timothy J. O'Neill appeared for the Office of Attorney Regulation Counsel ("the People"), and John A. McNamara III ("Respondent") appeared pro se. The Hearing Board now issues this "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(b)."

## I. SUMMARY

Despite being prohibited from practicing law by two orders of suspension, Respondent failed to promptly notify clients that he could no longer represent them. Rather, he knowingly continued to practice law in violation of his suspension orders, solicited new clients, and accepted fees from them. To conceal his unauthorized practice of law, Respondent assumed the identity of a retired lawyer, impersonating that lawyer in pleadings and in a

telephone court conference. Because honesty, candor, and a due respect for the rule of law are cornerstones of the legal profession, misconduct such as Respondent's cannot and will not be tolerated.[1] Respondent must therefore be disbarred.

## II.  *PROCEDURAL HISTORY*

The People filed a complaint with ten claims in case number 12PDJ022 on February 29, 2012, and Respondent answered the complaint on May 24, 2012. On October 19, 2012, Respondent moved to recuse hearing board members Brown and Holme pursuant to C.R.C.P. 97, alleging they would be unable to treat him fairly. The PDJ denied that motion on November 16, 2012, reasoning that Respondent had not established either apparent or actual bias warranting recusal.

On October 1, 2012, the People filed a complaint in case number 12PDJ072, pleading an additional forty claims. Respondent answered on October 22, 2012. The People then filed a complaint in a third case, case number 12PDJ080, on November 2, 2012, asserting seven claims and seeking to consolidate the case with the prior two. The PDJ consolidated the three cases into the present action on November 21, 2012. Respondent filed a combined motion to dismiss and an answer to the claims in case number 12PDJ080 on December 7, 2012; the PDJ denied Respondent's motion to dismiss on January 11, 2013.

An at-issue conference in the consolidated action was held January 4, 2013. During that conference, a five-day hearing was set for July 15–19, 2013.

On May 20, 2013, the People sought summary judgment on twelve of the claims pled in case number 12PDJ072. On June 3, 2013, just a day before his response was due, Respondent sought an extension of time.[2] Although the PDJ found that Respondent had failed to elucidate why he could not timely respond to the People's motion, the PDJ granted Respondent an extension until June

19, 2013, in the interests of judicial efficiency and because the PDJ felt he would benefit from Respondent's response. On June 19, 2013, Respondent requested additional time to respond, which the People opposed; the PDJ declined to grant another extension during the prehearing conference on June 24, 2013.

Also during the prehearing conference—which Respondent did not attend—the PDJ announced that he would grant summary judgment on eleven of the twelve claims for which the People sought such disposition: Claims IV, V, VI, IX, XI, XXXIII, XXXIV, XXXV, XXXVIII, XXXIX, and XL in case number 12PDJ072.[3] As such, the PDJ declared that the five-day trial scheduled to commence July 15, 2013, would be converted to a one-day sanctions hearing on the eleven claims on which judgment had entered and that the remaining forty-six claims would be placed in abeyance.

On June 21, 2013, the People filed a motion for discovery sanctions pursuant to C.R.C.P. 37(d) and 251.18(d), citing as grounds Respondent's failure to appear at his two-day deposition and his refusal to respond to written discovery requests. Although Respondent's response was due on July 5, 2013, he instead filed on that date a motion for enlargement of time to respond and filed three days later the response itself. The PDJ did not formally grant Respondent's request for additional time but nevertheless considered the response when reviewing the People's motion for sanctions. The PDJ granted the People's motion and awarded them the reasonable expenses they incurred in attempting to depose Respondent.

At the start of the sanctions hearing, Respondent orally moved to recuse the PDJ, whom Respondent argued was biased. Respondent expressed concern that the PDJ would retaliate against him for filing a federal lawsuit and for requesting that the Denver District Attorney bring criminal charges

---

1.  *In re Pautler,* 47 P.3d 1175, 1178–79 (Colo. 2002).

2.  The PDJ's at-issue conference order of January 4, 2013, stated that motions for extensions of

time must be filed at least three days before the applicable deadline.

3.  All future references herein to claims are to those pled in case number 12PDJ072.

against the PDJ.[4] The PDJ denied that motion, relying on C.R.C.P. 97,[5] *Moody v. Corsentino,*[6] and *In re Mann.*[7]

During the sanctions hearing, neither the People nor Respondent called any witnesses to testify or introduced any exhibits. Respondent also rebuffed several invitations to testify, offer evidence in mitigation, or generally address the facts underlying this case. Respondent asserted that the outcome of the case was predetermined and that his only chance of relief was to seek a remedy in federal district court. Complaining that he had been repeatedly denied extensions of time in this matter, he contended that to begin to participate in the proceedings at this stage would, in essence, waive his argument that he needed additional time to respond to the People's claims. He pledged to present legal arguments and mitigating evidence in a C.R.C.P. 60(b) motion after issuance of the Hearing Board's sanctions decision.

## III. *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on May 16, 1990, under attorney registration number 19382. He is thus subject to the jurisdiction of the Colorado Supreme Court and the Hearing Board in these disciplinary proceedings.[8]

On July 15, 2011, a hearing board issued a "Decision and Order Imposing Sanctions Pursuant to C.R.C.P. 251.19(b)" in case number 10PDJ119, suspending Respondent for one year and one day, all but three months stayed, with the requirements that he seek reinstatement pursuant to C.R.C.P. 251.29(c)

and that he thereafter complete one year of probation, with conditions. Respondent appealed, and the hearing board stayed his sanction pending appeal.

On September 22, 2011, the Colorado Supreme Court issued an order in case number 11SA245, immediately suspending Respondent from the practice of law for failure to cooperate with the People during a disciplinary investigation. On September 23, 2011, a copy of this order was sent via the state's mail services division to Respondent's registered address: P.O. Box 100273, Denver, Colorado 80250. The Colorado Supreme Court lifted Respondent's immediate suspension on November 8, 2011.

However, on November 23, 2011, the Colorado Supreme Court dismissed Respondent's appeal in case number 10PDJ119. Soon thereafter, jurisdiction was returned to the PDJ, who suspended Respondent effective December 20, 2011. The order was sent to Respondent's email account and to his registered address by first-class mail. Respondent has not been reinstated to the practice of law, and his license remains suspended.

### The Doll–Shearer Matter— Claims IV, V, and VI

On August 12, 2011, Christine Doll–Shearer retained Respondent to represent her in an agister's lien action. Doll–Shearer signed Respondent's fee agreement and paid him $800.00 by personal check. On August 30, 2011, Respondent filed an entry of appearance with the Arapahoe County District Court in Doll–Shearer's case.

After the People had petitioned to immediately suspend his license for failing to co-

---

4. Respondent tendered to the Hearing Board a copy of the federal complaint, which was appended to a motion for a temporary restraining order seeking to halt the sanctions hearing. Although Respondent later explained that he presented the complaint only to obtain the PDJ's waiver of service, the PDJ retained the motion for a temporary restraining order and marked it as exhibit A to Respondent's oral motion to recuse.

5. "[A] motion by a party for disqualification shall be supported by affidavit." Respondent's motion was denied in part because it was not accompanied by an affidavit.

6. 843 P.2d 1355, 1374 (Colo.1993) (holding that a litigant's lawsuit against a judge is not sufficient to create a reasonable inference of bias).

7. 655 P.2d 814, 818 (Colo.1982) ("To allow a litigant to file a letter critical of a trial judge or to inform the judge of the filing of a complaint with the Judicial Qualifications Commission and later assert the judge's knowledge of the complaint or file as a basis for disqualification would encourage impermissible judge-shopping.").

8. *See* C.R.C.P. 251.1(b).

operate with a disciplinary investigation, Respondent appeared in court with Doll–Shearer on September 15, 2011, for a show cause hearing. At that hearing, the opposing party did not appear, and the matter was reset for September 27, 2011. Following the hearing, Doll–Shearer emailed Respondent with a list of witnesses to contact. She also called him on September 22, 2011, to inquire about the status of her case. That same day, Respondent was immediately suspended by the Colorado Supreme Court pursuant to C.R.C.P. 251.8.6 for failure to cooperate with a disciplinary investigation.

Having received no response from Respondent, Doll–Shearer requested an update on September 25, 2011. The next day, Doll–Shearer discussed her matter with another attorney and learned that Respondent's license to practice law had been immediately suspended. She left four telephone messages for Respondent, asking him to contact her, but he did not return her calls.

On September 27, 2011, Respondent emailed Doll–Shearer, reminding her of the hearing later that day and requesting that she bring certain documents. He did not mention his immediate suspension. That same day, Respondent filed a motion for summary judgment in Doll–Shearer's case. He then appeared for the hearing twenty minutes late, whereupon he began to argue in favor of the summary judgment motion he had just filed. Because Respondent's law license had been immediately suspended five days earlier, the court struck his motion for summary judgment. Based on these facts, the People sought—and the PDJ granted—summary judgment on Claims IV, V, and VI.

■ Claim IV pled a violation of Colo. RPC 3.4(c), which provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." The PDJ concluded that Respondent violated this rule in two ways. First, lawyers who are suspended from the practice of law must comply with the obligations set forth in C.R.C.P. 251.28, which requires suspended lawyers to wind up their businesses and notify clients of their suspensions. Respondent complied with neither obligation, however. Second, although Respondent knew of his immediate suspension, he continued to practice law in Doll–Shearer's matter by filing a motion for summary judgment and appearing for her at the hearing on September 27, 2011. By practicing law, he flouted the Colorado Supreme Court's immediate suspension order, thereby knowingly disobeying an obligation under the rules of a tribunal in contravention of Colo. RPC 3.4(c).

■ Claim V, on which the PDJ also granted summary judgment, is premised on Colo. RPC 5.5(a)(1). That rule provides that "[a] lawyer shall not practice law in this jurisdiction without a license to practice law issued by the Colorado Supreme Court unless specifically authorized by C.R.C.P. 200, C.R.C.P. 221, C.R.C.P. 221.1, C.R.C.P. 222 or federal or tribal law." Because Respondent filed a motion and appeared on Doll–Shearer's behalf following his immediate suspension, he engaged in the unauthorized practice of law and thus violated Colo. RPC 5.5(a)(1).[9]

Finally, the PDJ granted summary judgment on Claim VI, which alleges a violation of Colo. RPC 8.4(c). That rule provides "it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Respondent violated Colo. RPC 8.4(c) by misrepresenting to Doll–Shearer, through omission, that he was a validly licensed attorney after he had been immediately suspended.[10]

---

9. The practice of law consists of, among other things, advising clients regarding legal matters, preparing court pleadings, and appearing in court. *People v. Adams*, 243 P.3d 256, 266 (Colo. 2010); *see also People v. Shell*, 148 P.3d 162, 171 (Colo.2006) (defining the unauthorized practice of law to include offering legal advice, drafting or selecting legal pleadings, and holding oneself out as the representative of another in a legal action).

10. *See* C.R.C.P. 251.5(a) (providing that any omission in violation of the Colorado Rules of Professional Conduct is grounds for discipline); *see also In re Roose*, 69 P.3d 43, 46 (Colo.2003) (finding that an attorney's omissions to the court of appeals violated Colo. RPC 8.4(c)).

### The Martinez Matter—Claims IX and XI

Respondent agreed to represent Latifa Martinez in a criminal matter and executed a fee agreement with her on August 12, 2011. Martinez paid Respondent $500.00 that day. After his immediate suspension on September 22, 2011, Respondent communicated at least twice with Martinez concerning her case. During those communications, Respondent never informed Martinez that his license to practice law had been immediately suspended.

The PDJ granted summary judgment on Claim IX, finding that Respondent violated Colo. RPC 3.4(c). Respondent knew he had been immediately suspended because he had received the Colorado Supreme Court's mailed order and because his summary judgment motion in the Doll–Shearer matter had been struck. Even so, Respondent did not notify Martinez of his suspension as required by C.R.C.P. 251.28. As a result, he failed to comply with the obligations attendant to his order of suspension in violation of Colo. RPC 3.4(c).

Claim XI, premised on Colo. RPC 8.4(c), was also decided on summary judgment; the PDJ found that even though Respondent was notified of his suspension, he never communicated his suspended status to Martinez, despite having conversations with her about her case. His failure to do so constituted a misrepresentation by omission in violation of Colo. RPC 8.4(c).

### The Jenkins Matter—Claims XXXIII, XXXIV, and XXXV

Respondent was suspended as a disciplinary sanction on December 20, 2011. Nevertheless, on January 5, 2012, Respondent agreed to represent Russell Jenkins before the Adams County District Court in a domestic relations matter for $1,000.00. Respondent told Jenkins he would enter his appearance in the case that day. During the meeting, Respondent never told Jenkins that his license to practice law had been suspended.

Approximately two weeks later, Jenkins called the court to check on the status of his case and discovered that Respondent had not entered his appearance. Jenkins contacted Respondent, who stated that he would soon file an entry of appearance but that he had been unable to do so because he did not have access to LexisNexis. A few days later, Jenkins again called the court and learned that an entry of appearance had been filed on January 26, 2012, under the name of John Franklin. Franklin and Respondent had been colleagues at the El Paso County Attorney's Office more than ten years earlier.

Jenkins asked Respondent why Franklin had filed an entry of appearance; Respondent replied that because he had been too busy to do so, his partner, Franklin, had entered an appearance. Respondent also informed Jenkins that Franklin would be working on the case with him. At no time, however, did Franklin actually file any pleadings or sign any letters on behalf of Jenkins, Respondent, or John A. McNamara, P.C. Nor did Franklin share office space or have any other affiliation with Respondent or his professional corporation.

On February 17, 2012, a status conference was held in Jenkins's case, and Respondent entered his appearance. A week later, Respondent filed a letter to opposing counsel with the court through his LexisNexis account. The letter is on Respondent's letterhead, which contains only Respondent's contact information, yet the signature block indicates it was sent by John Franklin on behalf of John A. McNamara, P.C.

On February 27, 2012, Jenkins paid Respondent another $1,000.00, and Respondent asked Jenkins to sign a sworn financial statement, which Respondent had helped Jenkins prepare. Also that day, Respondent filed Jenkins's disclosures through LexisNexis. Although the disclosures listed the contact information of John A. McNamara, P.C.—including Respondent's cell phone number and post office box address—they were submitted under Franklin's name and attorney registration number.

On March 2, 2012, the trial court conducted a telephone status conference in Jenkins's case. Respondent called into the conference and announced he was "John Franklin." During the call, Jenkins learned that Re-

spondent's license to practice law had been suspended. Afterward, Jenkins called Respondent to ask why he had misrepresented himself as Franklin and to demand return of his $2,000.00. Jenkins also called Franklin to apologize for Respondent's behavior.

That day, the Honorable Ted C. Tow issued an order removing Respondent and Franklin as counsel for Jenkins. Judge Tow also ordered Respondent to show cause why he should not be held in contempt.

The PDJ entered summary judgment on the People's Claim XXXIII, which alleges Respondent violated Colo. RPC 3.4(c). Respondent violated this rule by soliciting Jenkins as a new client and accepting payment from him, even though he knew that his law license had been suspended on disciplinary grounds several weeks earlier. In addition, Respondent never notified Jenkins of his suspension, disregarding his obligations under C.R.C.P. 251.28.

■ Respondent also violated Colo. RPC 5.5(a)(1) by practicing law in Colorado without a valid law license when he accepted a retainer from Jenkins and represented him in his domestic matter.[11] The PDJ therefore entered summary judgment on Claim XXXIV.

■ Finally, summary judgment entered on Claim XXXV premised on two types of violations of Colo. RPC 8.4(c). First, Respondent misrepresented the status of his licensure through omission; concealment of his suspension constituted a misrepresentation by omission in violation of Colo. RPC 8.4(c).[12] Second, Respondent made affirmative misrepresentations when he told Jenkins that Franklin was his law partner, when he filed pleadings using Franklin's name and attorney number but without Franklin's permission, and when he appeared before the trial court by telephone as Franklin. These misrepresentations and dishonest statements violated Colo. RPC 8.4(c).

## The Hughes Matter—Claims XXXVIII, XXXIX, and XL

On October 24, 2011, approximately a month after the Colorado Supreme Court immediately suspended him, Respondent met with Dawn and Justin Hughes and agreed to represent them in a lawsuit against their apartment complex for a flat fee of $900.00. Respondent did not inform them that he was suspended.

The Hugheses gave Respondent $900.00 in three installments of $300.00, paid on October 24, November 21, and December 24, 2011. Between December 22, 2011, and January 20, 2012—while Respondent was subject to a disciplinary suspension order—Respondent communicated with the Hugheses regarding both legal and administrative aspects of their case, never once informing them that his license to practice law was no longer valid. On March 8, 2012, Respondent met with the couple and revealed that he had been suspended. Nevertheless, he continued to represent them by preparing a disclosure statement on their behalf.

■ The PDJ granted summary judgment on Claim XXXVIII, which alleges Respondent violated Colo. RPC 3.4(c) by knowingly disobeying his immediate order of suspension when he held himself out as an attorney to solicit the Hugheses as new clients. Respondent also ran afoul of this rule by continuing to represent the Hugheses in their legal matter and accepting additional fees from them in defiance of his disciplinary suspension order.

Summary judgment also entered as to Claim XXXIX, in which the People aver that through his representation of the Hugheses, Respondent practiced law without a valid license and thereby flouted Colo. RPC

---

11. The mere act of accepting payment in exchange for the promise to represent another constitutes the unauthorized practice of law. *See People v. Zimmermann,* 960 P.2d 85, 87 (Colo. 1998) (concluding that a lawyer violated Colo. RPC 5.5(a) by accepting a fee after the lawyer had been suspended).

12. *In re Roose,* 69 P.3d at 46; *People v. Redman,* 819 P.2d 495, 496 (Colo.1991) (ruling that a suspended lawyer had an affirmative duty to inform his client of his suspension, and that the lawyer's failure to do so constituted conduct involving dishonesty, fraud, deceit, or misrepresentation).

5.5(a)(1). The PDJ agreed, finding that Respondent engaged in the practice of law while immediately suspended by identifying himself as an attorney when he met with the Hugheses. He also engaged in the practice of law during his disciplinary suspension by accepting fees, advising the Hugheses about their legal matter, and preparing a disclosure statement.

Finally, as in the Doll–Shearer, Martinez, and Jenkins matters, Respondent failed to promptly alert the Hugheses that his law license had been suspended. The PDJ therefore entered summary judgment on Claim XL, concluding that this omission established an infraction of Colo. RPC 8.4(c).

## IV. SANCTIONS

■ The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[13] In imposing a sanction after a finding of lawyer misconduct, a hearing board must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted in consideration of aggravating and mitigating factors.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

■ *Duty:* Respondent violated duties he owed to his clients, the public, the legal system, and the profession. Chief among

these obligations was his responsibility to be candid with his clients, which included his duty to disclose his suspended status to Doll–Shearer, Martinez, Jenkins, and the Hugheses. He also breached this duty of candor when he affirmatively misrepresented to Jenkins and the court that he was professionally affiliated with Franklin.

Respondent also breached his duty to the general public to exhibit the highest standards of honesty and integrity and to employ only such means as were consistent with truth and honor. Likewise, he failed to uphold his duties to the legal system, which mandated that he abide by suspension orders and the rules of the attorney regulation system designed to facilitate the attorney investigation and discipline process. Indeed, as a legal professional and an officer of the court, Respondent betrayed his oath to respect legal rules and honor court orders.[14]

■ *Mental State:* The summary judgment order in this matter establishes, as an element of the Colo. RPC 3.4(c) rule violations, that Respondent knowingly disobeyed his orders of suspension by continuing to practice law and soliciting additional clients during those periods of suspension. The Hearing Board finds, as a corollary, that he knowingly[15] practiced law in violation of Colo. RPC 5.5(a) and misrepresented his status as a validly licensed attorney in violation of Colo. RPC 8.4(c) in the Doll–Shearer, Martinez, and Hughes matters.[16] But in the Jenkins matter, the Hearing Board concludes

---

13. *See In re Roose*, 69 P.3d at 46–47.

14. *See In re Kelley*, 52 Cal.3d 487, 276 Cal.Rptr. 375, 801 P.2d 1126, 1131 (1990) ("Disobedience of a court order, whether as a legal representative or as a party, demonstrates a lapse of character and a disrespect for the legal system that directly relate to an attorney's fitness to practice law and serve as an officer of the court.").

15. "Knowledge" is defined as the "conscious awareness of the nature or attendant circumstances of the conduct, but without the conscious objective or purpose to accomplish a particular result." ABA *Standards* § III at 9.

16. In these client matters, we conclude Respondent knowingly engaged in misconduct with the intent to secure a monetary benefit for himself, a

scenario envisioned by ABA *Standard* 7.1 ("Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system."). Respondent's intent to benefit himself is evidenced by his decisions to conceal his suspensions from his clients and to continue representing them, and by his acceptance of advance fees for legal work. *See People v. Bauer*, 80 P.3d 896, 898 (Colo.App.2003) (noting that the intent to gain a benefit unlawfully was demonstrated by a suspended lawyer's receipt of payment for legal work he was not licensed to perform).

Respondent acted with intent: [17] we infer from his actions a conscious objective to circumvent his disciplinary suspension and to deceive the court, his client, and the public by assuming the identity of a former colleague. Accordingly, we attribute to Respondent a knowing mental state as to Claims IV, V, VI, IX, XI, XXXVIII, XXXIX, and XL. We attribute to Respondent a mental state of intent as to Claims XXXIII, XXXIV, and XXXV.

■ *Injury:* Respondent's misconduct injured all four of his clients. In particular, he harmed Jenkins and the Hugheses, from whom he extracted advanced fees under false pretenses.[18] He also potentially harmed Doll–Shearer, Martinez, Jenkins, and the Hugheses by depriving them of the opportunity to retain a licensed attorney when he chose not to inform them of his suspensions. Further, had Respondent's suspensions been discovered by opposing counsel or court personnel, his clients could have been left without representation during crucial stages of their cases.

Actual harm to the legal system resulted from Respondent's failure to apprise his clients of his suspended status. In the Doll–Shearer and Martinez matters, Respondent's misconduct caused delay; his summary judgment motion was struck in the former, and the latter had to be continued. Further, in the Jenkins matter, the court was subjected to significant inconvenience. Judge Tow convened a conference call to uncover whether Respondent had been practicing law by impersonating Franklin, he removed both Respondent and Franklin as counsel of record, and he thereafter initiated contempt proceedings against Respondent. More intangibly, Respondent's flagrant disobedience of the Colorado Supreme Court's order of immediate suspension and the PDJ's order of disciplinary suspension had the potential to seriously undermine the authority and "respect due to courts and judicial officers." [19]

Respondent's misconduct also caused potentially serious injury to the public, in particular to Franklin, whose reputation could have been damaged by Respondent's use of his name and bar number. If, in the Jenkins matter, Respondent's appropriation of Franklin's identity had not been discovered promptly, and if Respondent had violated the trial court's orders while impersonating Franklin, the court might have cited Franklin for contempt or referred him for disciplinary investigation.

Most consequential, however, the integrity of the profession of law sustained serious harm. Taken as a whole, Respondent's behavior calls into question the profession's ability to self-regulate. When attorneys disregard the orders of the highest court in the state and actively thwart the attorney regulation process, lawyers' system of self-regulation and discipline is acutely denigrated in the minds of members of the bar and public.

### ABA *Standards* 4.0–7.0—Presumptive Sanction

In this matter, the Hearing Board looks to ABA *Standards* 4.62, 5.11, 6.22, 7.1, and 8.1; two of these standards call for suspension and three recommend disbarment. ABA *Standard* 4.62 states that suspension is generally appropriate when a lawyer knowingly deceives a client and causes the client injury or potential injury. Pursuant to ABA *Standard* 6.22, suspension is likewise warranted when a lawyer knowingly violates a court order or rule, resulting in injury or potential injury to a client or interference with a legal proceeding.

In contrast, ABA *Standard* 5.11 provides for disbarment when a lawyer engages in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fit-

---

17. "Intent is the conscious objective or purpose to accomplish a particular result." ABA *Standards* § III at 9.

18. *See Zimmermann,* 960 P.2d at 88 (concluding clients suffered actual harm "because they received little or no benefit from the fees they paid to [the attorney] and then they had ... to turn around and pay other lawyers additional fees for the legal services they had paid the [attorney] to perform").

19. *People v. Dalton,* 840 P.2d 351, 352 (Colo. 1992) (quoting *Losavio v. Dist. Court,* 182 Colo. 180, 185, 512 P.2d 266, 268 (1973)).

ness to practice. Disbarment is also the presumptive sanction under ABA *Standard* 7.1 where an attorney knowingly violates a duty owed as a professional with the intent to obtain a benefit for the attorney, thereby causing serious or potentially serious injury to a client, the public, or the legal system. And ABA *Standard* 8.1(a) recommends disbarment when an attorney intentionally or knowingly violates the terms of a prior disciplinary order, causing injury or potential injury to a client, the public, the legal system, or the profession.

■ We also take into account the ABA *Standards'* exhortation that in cases involving multiple types of attorney misconduct, the ultimate sanction should at least be consistent with the sanction for the most serious disciplinary violation and generally should be greater than the sanction for the most serious misconduct.[20]

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

■ Aggravating circumstances are any considerations that may justify an increase in the degree of the presumptive sanction to be imposed, while mitigating circumstances may justify a reduction in the severity of the sanction.[21] Because Respondent effectively declined to participate in the sanctions hearing, despite twice being encouraged by different members of the Hearing Board to do so, we know of no factors in mitigation. We apply in aggravation, as set forth below, eight of the nine factors advanced by the People.

*Prior Disciplinary Offenses—9.22(a):* On December 20, 2011, Respondent was suspended in case number 10PDJ109 for one year and one day, all but ninety days stayed, with the requirement he petition for reinstatement. His license to practice law has not been reinstated.

*Dishonest or Selfish Motive—9.22(b):* In the Doll–Shearer, Martinez, and Hughes matters, Respondent misrepresented his status as a validly licensed attorney for his financial benefit. In the Jenkins matter, Respondent was similarly motivated by pecuniary gain to practice law while suspended, and he disassembled in client dealings and court communications in order to conceal his misconduct.

*Pattern of Misconduct—9.22(c):* In four client matters, Respondent practiced law in direct contravention of suspension orders with no effort to inform his clients of his suspended status, establishing a pattern of disregarding the rules and court orders that regulate the practice of law in this state.

*Multiple Offenses—9.22(d):* Respondent committed three distinct sets of offenses: he practiced law while subject to two separate suspension orders, he failed to notify his clients of either suspension, and in the Jenkins matter he attempted to evade his disciplinary suspension order through duplicity.

*Bad Faith Obstruction of the Disciplinary Proceeding—9.22(e):* As described in an order granting the People's request for sanctions based on Respondent's discovery violations, Respondent in bad faith failed to attend his properly noticed deposition or to otherwise notify the People that he would not appear. Further, he declined to timely respond to legitimately propounded interrogatories and document requests in deliberate disobedience of discovery rules and the PDJ's orders.

*Refusal to Acknowledge Wrongful Nature of Conduct—9.22(g):* Rather than accept responsibility for his misconduct or defend against the People's claims, Respondent limited his participation in this case to denouncing these proceedings as "payback by the Office of Attorney Regulation Counsel and [the PDJ] for challenging the legality of both the OARC's actions and Judge Lucero's actions going back to the earlier case in 10 PDJ 109."[22]

*Substantial Experience in the Practice of Law—9.22(i):* Respondent was admitted to the bar in 1990 and thus qualifies as an experienced practitioner.

---

20. ABA *Standards* § II at 7.

21. *See* ABA *Standards* 9.21 & 9.31.

22. Respondent's Resp. to Complainant's Mot. for Discovery Sanctions at 2.

■ *Indifference to Making Restitution—9.22(j):* This is the sole aggravating factor proposed by the People that we decline to apply. We lack sufficient basis to determine whether Respondent has endeavored to make restitution or is indifferent to making restitution.

■ *Illegal Conduct—9.22(k):* Respondent engaged in the illegal conduct of criminal impersonation, which is defined as knowingly assuming a false or fictitious identity or capacity and using that identity to, among other things, perform an act with the intent to unlawfully gain a benefit.[23] In the Jenkins matter, Respondent criminally impersonated Franklin by intentionally assuming his identity in order to practice law while suspended. By retaining Jenkins's advance fee, even though he knew he could not lawfully represent Jenkins while his law license was suspended, Respondent acted with the intent to gain an unlawful financial benefit.[24]

### Analysis Under ABA *Standards* and Colorado Case Law

■ We are aware of the Colorado Supreme Court's directive to exercise our discretion in selecting a sanction by carefully applying the aggravating and mitigating factors,[25] mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[26] Although prior cases are helpful by way of analogy, appropriate sanctions for lawyer misconduct are determined on a case-by-case basis.

■ In this case, two standards propose suspension as the presumptive sanction, while three standards urge disbarment. As noted above, in such cases the ABA *Standards* counsel that the ultimate sanction should be at least consistent with, if not greater than, the sanction for the most serious misconduct. In light of that guidance, we see no cause to retreat from the presumptive sanction of disbarment. To the contrary, this very situation is contemplated by the commentary accompanying ABA *Standard* 8.1, which notes that disbarment is appropriate when a lawyer intentionally or knowingly violates the terms of an order of discipline: "The most common case is one where a lawyer has been suspended but, nevertheless, practices law. The courts are generally in agreement in imposing disbarment in such cases."[27] The ABA *Standards,* then, coupled with the eight factors in aggravation, overwhelmingly incline us toward imposing the maximum sanction available.

Nor would case law endorse a different result: time and again, the Colorado Supreme Court has imposed disbarment when a lawyer practices law while suspended and thereby harms a client.[28] As in those cases,

23. C.R.S. § 18–5–113(1)(b)(II). Respondent need not be charged with a violation of the criminal law before we can apply this factor in aggravation. *See In re Depew,* 290 Kan. 1057, 237 P.3d 24, 35 (2010) (approving application of ABA *Standard* 9.22(k), even though the respondent was not charged with or convicted of conduct considered illegal).

24. *Bauer,* 80 P.3d at 898 (holding that a defendant assumed a false identity or capacity within the meaning of the criminal impersonation statute when he practiced law after his license was suspended and when he received payment for legal work he was not licensed to perform).

25. *In re Attorney F.,* 285 P.3d 322, 327 (Colo. 2012); *see also In re Fischer,* 89 P.3d 817, 822 (Colo.2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

26. *In re Rosen,* 198 P.3d 116, 121 (Colo.2008).

27. Commentary to the standard also cites *In re McInerney,* 389 Mass. 528, 451 N.E.2d 401, 405 (1983), where the court observed that the attorney's "willingness to violate the terms of his suspension order and to mislead the court as to the nature and extent of his activities" justified disbarment "as a prophylactic measure to prevent further misconduct by the offending individual."

28. *See Zimmermann,* 960 P.2d at 88 (disbarring a lawyer who violated a disciplinary suspension order and engaged in other misconduct, causing actual harm to clients); *People v. Redman,* 902 P.2d 839, 839–40 (Colo.1995) (disbarring an attorney who practiced law in several matters in violation of administrative and disciplinary suspension orders); *People v. Wilson,* 832 P.2d 943, 945 (Colo.1992) (ruling that "[a] lawyer's continued practice of law while under an order of suspension, with no efforts to wind up the legal practice, and failure to take action to protect the legal interests of the lawyer's clients, warrants disbarment"); *People v. James,* 731 P.2d 698, 700

Respondent's behavior seriously adversely reflects on his fitness to practice law: his decision not to inform his clients of his suspended status represents a flagrant violation of the trust that should exist between an attorney and client; his continued practice of law in the face of two suspension orders suggests a contumacy that repudiates the legitimacy of the attorney regulation process; and his intentional deception upends expectations that lawyers serve as ministers of justice and truth. Considering the presumptive sanction recommended by three applicable ABA *Standards,* the eight factors in aggravation, and the futility of imposing another period of suspension, we conclude disbarment is necessary.

## V. *CONCLUSION*

In four matters, Respondent failed to notify his clients that his law license had been suspended, and he continued to practice law without a valid license in violation of two suspension orders. Compounding this misconduct, he assumed the identity of a former colleague to conceal his unauthorized practice of law—conduct so egregious that it, standing alone, would warrant disbarment. Because Respondent did not abide by orders issued under the authority of the Colorado Supreme Court, the Hearing Board has no faith that he will honor orders issued by any court. Likewise, because Respondent failed in these matters to deal honestly with courts, clients, and the public, we have no faith that he will be truthful in the future. We conclude that any sanction other than disbarment does not sufficiently protect the public, stand as a deterrent to other suspended lawyers, or sustain the public's confidence in the integrity of lawyers' system of self-regulation. We therefore disbar Respondent.

(Colo.1987) (disbarring an attorney who practiced law while administratively suspended, resulting in serious damage to his client); *see also In re Boyd,* 399 S.C. 356, 731 S.E.2d 876, 877–78 (2012) (disbarring an attorney who, among other things, impersonated a licensed attorney in pleadings and before a tribunal in order to practice law while suspended); *cf. People v. Ross,* 873 P.2d 728, 730 (Colo.1994) (suspending for three years a lawyer who practiced law while suspended, where the lawyer's conduct did not injure his client).

## VI. *ORDER*

The Hearing Board and the PDJ therefore **ORDERS:**

1. **JOHN A. McNAMARA III,** attorney registration number 19382, is **DISBARRED.** The **DISBARMENT SHALL** take effect only upon issuance of an "Order and Notice of Disbarment." [29]

2. Respondent **SHALL** promptly comply with C.R.C.P. 251.28, including winding up of affairs, notice to parties in pending matters, notice to parties in litigation, and maintaining records.[30]

3. Respondent **SHALL** file with the PDJ, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d).

4. The parties **SHALL** file any post-hearing motion or application for stay pending appeal **on or before Tuesday, October 1, 2013.** No extensions of time will be granted. Any response thereto **SHALL** be filed **within seven days,** unless otherwise ordered.

5. No later than **seven days** after the PDJ issues an order and notice of sanction or the Colorado Supreme Court issues any other final disposition of this matter, the People **SHALL** file a notice with the PDJ setting forth how they wish to proceed with the remaining claims held in abeyance. Respondent may submit a response within seven days thereafter.

6. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** file a "Statement of Costs"

**29.** In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.

**30.** *See* C.R.C.P. 251.28(g) ("Proof of compliance with this section shall be a condition precedent to any petition for reinstatement or readmission.").

within **fourteen days.** Respondent may file a response to the People's statement within seven days thereafter.

7. Respondent **SHALL** pay restitution to Christine Doll–Shearer, Latifa Martinez, Russell Jenkins, and Dawn and Justin Hughes, or, if the Colorado Attorney's Fund for Client Protection has reimbursed these clients, Respondent **SHALL** reimburse the Fund for its disbursements. The People **SHALL** file a "Statement of Restitu-

tion" **within fourteen days.** Respondent may file a response thereto within seven days thereafter.

8. Respondent's oral motion to recuse the PDJ is **DENIED.**